New York State Vegetable Growers, et al. v. Leisha James, et al. Do you want to pronounce your last name for me? View. Mr. View, you have reserved two minutes for rebuttal, and you can begin whenever you're ready. Thank you, Your Honor. May it please the Court, my name is Josh View with Fisher Phillips Law Firm, and I represent the plaintiff appellees in this case. We filed an appeal challenging the partial denial of a preliminary injunction at the district court level, in which plaintiffs sought an injunction to enjoin various parts of the Farm Labor Fair Labor Practices Act, and specifically the portions of that act that provide farm workers with the right to organize and collectively bargain. One of the key points that we want to address in our appeal is that the district court, based on finding that we did not have standing, that the plaintiffs did not have standing to bring claims on behalf of farm workers themselves, failed to address the procedural due process claims of the actual plaintiffs in the case, the farmers in the State of New York. What happens, and there's main ways that the legislature, in reaction to a New York State case, Hernandez v. State of New York, which found that it was unconstitutional under the state constitution to not give farm workers the protection, the right to organize and collectively bargain, that's a right that they are exempt from under the National Labor Relations Act. And all the legislature needed to do in response to that decision was to amend the definition of employer in the State Employment Relations Act to remove the exclusion for agricultural employees. Instead, the legislature went much further and changed the process by which one farm workers can organize, that eliminated the process of a secret ballot election in place of what is commonly referred to as card check, in which the union gets, if it gets 50% plus one of the workers to sign authorization cards, they submit that to the state agency, which is the Public Employment Relations Board, and the union is presumably certified as- That's their prerogative, isn't it, to clean up, amend, or bring up the data law that was essentially passed 90 years ago? Yeah, it is their prerogative to do that. However, the way in which they've done it in this case violates the procedural due process. I understand that your clients have the opportunity to object to the certification petitions, present evidence, appeal the certification decision to the PRB and then to state court, and there are a number of procedural safeguards with respect to the arbitration. So why isn't that enough to satisfy due process? Well, those protections are illusory. In reality, what has happened in the cases and the statute only provides for- How do we know on this record that they're illusory? Well, because there is evidence in the record that some of the farm plaintiffs have submitted evidence in response to a petition in which employees have provided statements, there's been video evidence that the plaintiffs represented that they would present at a hearing, that these cards were obtained through fraud and coercion. And the standard is that you have to demonstrate that by clear and convincing evidence to even get to a hearing in which you would be allowed to present that evidence. And the particular- One of the justifications that the state provided was that there are peculiarities in the agricultural industry that required them to put in these different types of procedures than what we typically see for other employees around the state. When in reality, the specific uniqueness of the agricultural industry requires the opposite. It requires more. We've been- You're suggesting that the agricultural industry is unique. Yes. So it's not similarly situated to other industries. That's another way of saying unique, right? Well, it is another way of saying it's unique, but I'm not saying that it's unique from other industries in terms of the procedural due process protections that it's entitled to in this procedure, or that there are, that this uniqueness- So it's the same? Because I thought you were suggesting they need more protections. Well, different protections than what they have now. Not necessarily different protections. You mean, when I say different, I mean different from other industry employers. Right. Well, frankly- No, I just want to understand, because you just said they're unique. Are you saying that they need different and more stringent protections than other industry employers? I'm not. And actually- So what do you mean by unique, then? I'm not following. Well, it's unique in that the workforce is largely transient. Many of the workers who participate, who work on farms in New York, are here pursuant to the federal H-2A program, which allows temporary labor in agriculture. But it's not unique in a way- So why does that matter? Well, it matters here because- Why do these unique features matter? to their home countries, because they're required to return to their home countries after the season ends and after the contract expires that they're working on, which is a federally mandated contract. The employer then, once this petition is filed, has eight days to gather all of this evidence and to prove by clear and convincing evidence that these cards were obtained through fraud and coercion. But those issues that I brought up were gone over ferociously in Albany before the legislature. And this law, like probably 90% of the laws that come out of Albany or come out of Washington, for that matter, have a substantial group on the other side that thinks that the legislature just didn't get it right, screwed it up. Well, that's what we think here. We think that the legislature went too far in terms of beyond what the legitimate state interest is, which, based on the Hernandez decision and based on the New York State Constitution, is to give these workers the right to collectively bargain and organize. Instead- Unconstitutional on its face? Both on its face and as applied. There are a number of these provisions that are violations on their face. The card check provision- I don't understand. On a due process, you have to show that even if what you're saying is true, that there's not going to be a sufficient process for your client to vindicate these rights. You could appeal to the PRB, yes or no? You cannot appeal a certification decision. You cannot? You can appeal it to PERB, but you cannot appeal it to a court. And while the appeal is pending to the PERB board, the bargaining obligation remains. They will not stay the bargaining obligation while that is pending. There's nothing in the statute that allows you to go to court to challenge the certification issue. But you can appeal to the PERB. I thought that was the question. You can appeal to the PERB. And if you lose there, you can go to state court, right? But not on the certification issue. The only thing that the statute says you can appeal to state court is an unfair labor practice charge. So what the plaintiffs would have to do in this case is- Would that include fraudulently getting everybody to sign the cards? It's unclear whether that would- In your view, is that not covered as an unfair labor practice? The employers are not allowed to file unfair labor practice charges under the statute. But they can challenge the certification. They can challenge the denial of a request for hearing in response to the certification. But during that time, and the PERB board has taken months to rule on some of these appeals, in that time- So it's not that you can't challenge it, it's that it takes too long to challenge it in your view? And then the hay is out of the barn, so to speak. Is that right? No, I just want- Let's just pause there. Is it that you can challenge it, but that your due process claim arises from how long it takes to challenge it? No, it arises from the fact that the certification remains in place. And the reparable harm is occurring during the time that it's pending before the PERB board. Because they won't stay the bargaining obligation while the appeal is pending. And so you're responding to information requests you require to bargain. And then potentially within 70 days of the certification, you're going to be referred to arbitration. Where the arbitrator is going to decide what the terms of the contract are. Let's see if from your adversary you reserve two minutes for a vote. Mr. Spadoli. Good morning, may it please the court. I'd like to clarify the last point that Mr. Yu made about the judicial review available for certification decisions. If a union is certified, an employer can challenge that to the Public Employment Relations Board. If the board rejects that challenge, they can then bring an Article 78 proceeding to challenge the board's decision. Because that is a final order of the board. And in fact, a hearing officer recently issued a decision making that exact point. Mr. Yu, I think, is referring to older case law. Suggesting that the board's order doesn't become final until an unfair labor practice charge is filed against the employer. And at that point, the certification decision can be challenged in state court. So under older case law, before these recent amendments, the certification decision was considered interlocutory. Until the employer refused to bargain with the union. At that point, there'd be an unfair labor practice charge. And a decision from that would be challengeable in an Article 78 proceeding. And that would bring up for review the certification. But that's not the procedure that applies now. You can, an employer can challenge a certification decision by the board directly in an Article 78 proceeding. And there is also ample process before the certification. As some of your honors pointed out, they have an opportunity to present ample evidence. Including witness statements, documentary evidence, legal briefs. Which they, in fact, did. All of the plaintiff farms in this case submitted over 100 pages of evidence in response to certification petitions. And like in a judicial proceeding, they have a right to a hearing if they can raise a material issue of disputed fact. Now, in this case, they were unable to raise an issue of disputed fact on their claims of fraud and coercion. And that is clear on the record here. Because the worker statements that Mr. Yu referenced do not indicate fraud and coercion. One set of workers simply said, I am not interested in joining any union at this time. That was the statements that the employer submitted in response to the certification petition. That merely says that at this time, I no longer support the union. The workers did not say that they didn't deny signing the cards supporting the union. And they did not say that the union lied to them when they presented the cards. And the board applies a standard for fraud that has been well established in the labor law context for decades. It's known as the Cumberland Shoe Doctrine. It was upheld by the U.S. Supreme Court in the Gissell Packing case. And what that doctrine says is that if the language of an authorization card is clear on its face, then employees are bound by that language unless it is, quote, deliberately and clearly canceled by a union adherent with words calculated to direct the signer to disregard and forget the language above his signature. So it's basically a plain language standard. And here, the cards were extremely clear. I would point the court to page 1059 of the record for an example of a card, the authorization cards, and the underlying proceedings. And it basically is two sentences. It says, I authorize the United Farm Workers to represent me in collective bargaining. And I authorize them to deduct fees from my wages. And they were submitted to the workers in their native language, which was Spanish for most of these workers. And there was no evidence that union officials made misrepresentations that would satisfy this well-established fraud standard. And in fact, just to put a fine point on this, because I think the fraud and coercion is at the heart of all of their claims. Because at the end of the day, card certification is simply a method by which employees can exercise their right to choose to join a union or not. They're free to sign the card or not sign the card. If they sign it, it's a vote in favor of the union. If they don't sign it, it's a vote against the union. Help me understand this. I understand how these procedures can theoretically be appropriately applied to many agricultural workers. But I don't understand how this whole process works in the context of people who are holding H-2A visas. It works the same way as in any seasonal industry, Your Honor. So the card drive is a snapshot in time in the same way that a secret ballot election is a snapshot in time. And so when the union submits a certification petition, they submit all the cards that they've collected from workers. And the board then looks at the employees who are on the payroll at that time. So if you're talking about H-2A workers, the union can collect the signatures. They came up in April, and the organizational activity took place. It's now October, and they're back in Mexico. If they're back in Mexico and they're no longer on the payroll, they're not counted. Then they're back the next year. So if they're recalled for the next year, their vote would be counted to the extent they're on the payroll when the certification petition is filed. That is the relevant moment in time. And because many of these workers are, in fact, recalled, their workforce is somewhat consistent from year to year. And therefore, if you have, let's say, 20 H-2A workers who all signed cards in a unit of 25, and the vast majority are recalled from one year to the next, if the union can establish that they have majority support when they file their petition, then there's no reason to doubt that that majority support will continue from year to year. And if it doesn't continue, there's a decertification procedure available under the PERB contrary to the plaintiff's claims. Can I ask you a more global question? The district court went through the claims, a portion of the claims, and knocked them out on various grounds. One was standing, one was ripeness, and then did a likelihood of success on the merits analysis as to the due process substantive procedural. But then with respect to the remaining claims said, there's no irreparable harm with respect to the remaining claims. They point out in their briefs that all of their claims are constitutional claims, and that there's case law out there that suggests that a violation of the Constitution, their own harm is presumed. So is that a problem that the district court sort of stopped the likelihood of success in the merits analysis after several of the claims? Even though there is case law saying that it's not always presumed. So there is case law from this circuit saying that the court has not spoken with a single voice about whether there's a presumption of harm for constitutional claims. Even if harm is presumed, the presumption of harm can be rebutted. And here, at the time that the district court issued its decision, the defendants had put forth evidence showing that there was no risk of irreparable harm because the arbitration proceedings on which they were basing their claim of irreparable harm were well into the future, and in fact still are well into the future. The nearest arbitration hearing that will occur, based on what I've been told, is not until April or May. And then even after that award is issued, the parties have a right to bring an Article 75 proceeding to either vacate or confirm the award. And then they're entitled to the full panoply of judicial review in that proceeding. And so that can take a very long time before we have an award there. So your position is they weren't arguing irreparable harm with respect to some of these other claims, like the Supremacy Clause claim for the H-2A workers. It was based upon the arbitration? Correct. Some of their claims were based upon arbitration, and there was no irreparable harm for the reason I just said. For the H-2A workers, the harm was even more remote because it was based on not just a speculative hypothetical but a completely implausible hypothetical that an arbitrator or the board would require employers to recall workers who are not eligible to reenter the country, which is completely contrary to how collective bargaining has worked for decades for H-2A workers. It's understood that they can only be recalled if they are eligible to obtain a visa, and their assumption that either the board or an impasse arbitrator would require them to violate federal laws is not supported by the record and is totally speculative. And that's why the court ultimately found no irreparable harm. But even if the court disagrees, it can go on to reach the likelihood of success on the merits portion of the analysis. But what do we do with the sort of bucket of claims that the judge basically never really got to? He says the record is ignored. Plaintiffs demonstrated irreparable harm with absolute injunction with regard to any remaining claims. There's no real analysis in that rather cryptic statement that would permit us to know what to do at this point. Well, the court – it's true that for some of the claims there was no analysis. Some of the claims were discussed at the oral argument that the court incorporated by reference in its decision. But this court, because there are no outstanding factual issues, as the parties agree, this court can affirm on any ground supported by the record. And the record supports a finding of no irreparable harm for those remaining claims. And it also shows that there's – And they also did not seek the injunction based upon, for example, the contracts clause or the takings clause. They never made an argument for the injunction based upon some of the claims, right? Before the district court. That's correct. Some of the claims were not pressed before the district court. In fact – What's going to happen if we affirm the denial of the preliminary injunction as a matter of course? What's going to happen with respect – is there going to be motions then for summary judgment? What's going to happen? Either motions to dismiss or a motion for summary judgment, yes. I mean, there's no discovery. Is there any discovery that's going to have to happen? Or are these just purely legal issues? At this point, I don't know what further factual development would be required. But the defendants would probably want to move to dismiss certain claims as – even accepting their allegations as true is not stating a claim. So there might be a motion to dismiss as a threshold matter. And there is one claim that the district court granted the injunction for, correct? Yes, correct. The First Amendment one? Correct. And the state is not challenging that. In fact, the state ultimately agrees with the First Amendment analysis that the court adopted there. It was just a matter of whether we thought the statute incorporated the First Amendment limitations. The district court disagreed with us. But the board actually recently promulgated a rule adopting the very restrictions that the court thought was necessary. So on remand, there will probably be motion practice about lifting that preliminary injunction now that the state has – So are these remaining claims ones that are really best – sorted through on a remand? On the merits, yes, Your Honor. The plaintiffs did not establish their entitlement to a preliminary injunction on those remaining claims. Many of them were throwaway claims. For example, their claim that the structure and staffing practices of the board create conflicts of interest. The court didn't expressly address that. It's clearly contrary to the record evidence. The only substantive claim the court did not specifically address is the procedural due process claim challenging card check certification. And the reason is that there were many claims being raised, and that was less the focus in the district court. The plaintiffs were much more focused on the preemption issue below, which the court did address. And we think there's – the court's reasoning on the claims it did address was correct, and the record supports its conclusions on any remaining claims. For that reason, we urge the court to affirm. Thank you. Mr. Vieau, you have two minutes. Thank you. On the final point, the question that you were asking, Your Honor, the state admits in their response to our emergency motion for injunction in front of this court that the district court on page 16 did not address the merits of the due process claim on which plaintiffs based their current motion. And that does involve the card check procedure and the impact of that on the plaintiffs. The challenge – first of all, there's no New York court that has said that a certification decision is directly appealable. That hasn't happened. Even if a challenge was possible, it would be illusory because there's no evidence. The employer doesn't get to see the cards. The cards are inspected by the hearing officer. The PERB board doesn't even get to see the cards. In one of the – for one of the farm plaintiffs in this case – It was raised in Article 78 that the failure to provide that type of procedural protection could be the subject of an Article 78, couldn't it? I don't know. That's not in the statute. And, again, by that point, by the time you got through – It's arbitrary for them to reach these findings without providing an opportunity to be heard in that way, right? Well, but I don't think that Article 78 is the appropriate place to bring a constitutional challenge like we're bringing here. And so that's why we brought – and the irreparable harm has already occurred because the plaintiffs have already gone through this unconstitutional process. It's not a claim to us that the state system doesn't give you due process. But if Article 78 is part of the process, then we have to consider it, right? Well, you have to consider it, but I don't think that that post-deprivation remedy is sufficient. By then, everything's already happened. And one other point on the card signing, when the attorney for the state talked about the language on the cards and how it's been a longstanding principle of labor relations that these cards are sacrosanct and that the language governs. That's in the traditional sense of these cards, in which they're used to establish a showing of interest, at which point the government will conduct a secret ballot election. Here, the secret of ballot election is the cards, and it's not secret. One candidate gets the opportunity to get votes, and the other does not, and gets blindsided with the certification at the end of the process. Thank you very much to both of you. Reserve decision. Have a good day.